Good afternoon, I guess it is now, Your Honors. My name is Zane Hilton, and may it please the Court, I represent Paola Garcia and Paola Garcia v. Wells Fargo. And if I may, I'd like to start with the CFRA right to reinstatement, the interference claim. And it is a per se violation of 12-945. So was this really interference or a termination during the period of CFRA? Well, I believe it's difficult to quantify what the violation is. It is a per se violation. There is a right to reinstatement in the CFRA. And whether or not it is actually interference, I think it is both interference and retaliation, or it is in and of itself its own violation of the CFRA. The statute is quite clear that you cannot discharge an employee while they're on CFRA leave unless you offer them the same or equivalent position. As I read it, unless the position has been validly terminated. Yes, that is correct. That is an affirmative defense to the CFRA violation. But they have to show that, one, they would have discharged the plaintiff anyway, and, two, that the use of leave played no role in the termination decision. And here, Wells Fargo asserts that there was this generalized slowdown in the mortgage business, except they hired another HMC. And it's not to say that the HMC and HMC Jr., which was Ms. Paula Garcia's job, are different positions, but everything that an HMC Jr. does, an HMC also does, but there is some extra work that the HMC also does. What is the person called? HMC. HMC. I believe it's Home Mortgage Consultant. One question I had which wasn't clear to me is that apparently at the time, are you essentially contesting the layoff as protectural? For purposes of the retaliation claims, yes. But for the purposes of this per se violation, I think the analysis is slightly different. Whereas pretext, it's the plaintiff's burden to show the decision was pretextual, the so-called. But that's the same thing because they have an obligation to reinstate her unless they eliminate the job. So, therefore, the question is you have to be attacking the legitimacy of the elimination of the job by saying that it was essentially motivated by a retaliatory or an impermissible motive. Not, I think. They say we've eliminated the job. Yes. You have to, so somebody has to just prove that. Or they have to prove that it was eliminated for legitimate reasons rather than the plaintiff proving that it was for not. Okay, with regard to that. There was some evidence that I think there were eight. They put some evidence in that in fact the number of loans had gone down and some evidence that they laid off what, like that they eliminated eight. Seven or eight positions. In the region. What does that mean? Out of how many? I don't know the exact number of employees, but the region includes the entire West Coast, the United States, Nevada, and Hawaii. So, therefore, a very small number and a very big. Yes. We're talking eight jobs out of thousands. And the only. Isn't that right? Yeah. I don't know if it's thousands. I don't know how many. Well, it's Wells Fargo Bank. Yes. I think we can assume that Wells Fargo has very many employees on the West Coast, Nevada, and Hawaii. And interesting, the list of employees that they laid off in the seven to eight employees, only one other of those employees appears to be mortgage related. Where is that in the record, the site on who was laid off? There is a document in the record. I do not have the site in front of me. It's a document that Wells Fargo provided with a list of the names of the employees and the job title and where they worked. Does CFRA define what a reduction in force is anywhere? I am not aware if it does. I think that for purposes of this defense, I cited to the cases as California civil jury instruction, which sets out the standard by which you can do this otherwise legitimate termination, and it's a two-step standard that would have discharged the plaintiff anyway and that the leave played no role in the termination. This didn't appear to be any kind of a reduction in force. But the HMC, Jr., HMC relationship was one that was a year-by-year, and as I understand it, the HMC was sort of the principal position and had to agree to share fees with an HMC, Jr., sort of getting a personal assistant who would get, I think, 25%, 75% to the HMC. I believe that's correct. And Ms. Garcia's HMC was Deborah, how do you pronounce her last name, Marku, Marko? I believe it's Marko. Marko. But I don't know for sure. And it looks like she's the one who initiated the discussion with management that she no longer, that she didn't think that Ms. Garcia was benefiting her, she was coming to the end of the term, and that she didn't want to go forward with her. Well, interestingly, the term had already passed months ago, and so, and also Ms. Marko. At that point, did she become nearly at will? I believe so, yes, she becomes an at-will employee. At some point, Ms. Marko decides that this is not an advantageous relationship for her because she's sharing her fees with Ms. Garcia, and she doesn't think Ms. Garcia is pulling her low. But there's no evidence of Ms. Marko having any ill will towards Ms. Garcia. Is there any allegation? Well, I would say that at this point, Ms. Marko had gotten a promotion. She was now the branch manager, and so their relationship had changed. How could she have an HMC, Jr., then, if she had become the branch manager? Well, my understanding is that these HMC, Jr.s could be attached to a different HMC. They could be attached to someone else, or they could be moved into a different position in the bank. So who makes the decision? The implication, and I got it, too, from, is that the HMC decides whether she's going to have this assistant or not have the assistant, and it's up to her, or what? The record, I believe, is silent. Wells Fargo alleges that that is the case. I have no facts in the record. But you went to summary judgment on this, right? Yes. Okay. So you've put all the evidence in that you wanted to put in. That is correct. The trial team did put in all the evidence they wanted to put in. Did you depose any of the Wells Fargo folks? As far as I know, no depositions were taken. Okay. Was there any deposition taken? One of Ms. Garcia? I do not know. I do not believe. But at this point, we think that all the evidence is in that we're going to get. There was. I believe she was deposed. I don't believe the plaintiff. She was deposed by Wells Fargo. But Ms. Garcia's side didn't. Were you trial counsel? No, I was not. Okay. All right. But whatever it was, trial counsel didn't depose anybody at Wells Fargo. As far as I know. So Ms. Marco was not deposed. The only evidence we have, then, as to what Ms. Marco would testify to is her declaration. Yes. And she said that it was her understanding that no one else wanted an assistant. Yes. However, there are a list of other jobs that Ms. Garcia was qualified for that they presented to her when they laid her off that they said she needed to apply for. My reading of the CFRA is that they should have offered her one of those jobs rather than making her apply for one of those jobs. Did she apply for them? No. No, she did not. And I think it's a reasonable thing for someone who believes that they've been discriminated against because they're pregnant and fired because they're pregnant not to want to continue. Okay. So who does she think discriminated against her? She thinks it's the – and for purposes of the promotional decision, she believes it's the – so the woman who made the promotional decision, her supervisor – and I apologize, blanking on the woman's name. I'm a bit low-key because of the approaching lunch hour. Her supervisor made the comment, well, we can't have someone who's pregnant. Is that Ms. Hassan? I believe so, yes. Okay. But we also have the only evidence in the record is that Ms. Hassan was not involved in the decision to terminate her. It was a hearsay question anyway, so we're not sure. But even crediting the statement, the statement from those who made the decision was that Ms. Hassan had no duties here. She had no part in – she didn't participate in the decision to terminate her. I believe Ms. Hassan is the supervisor of the people – well, not the decision to terminate her. But the people who decided to terminate her said Ms. Hassan had no input on this decision. Well, there are two separate adverse actions here. First, there is the failure to promote. And the failure to promote Ms. Hassan is the supervisor of the person who did not promote Ms. Garcia. And who didn't promote her. But isn't it undisputed in the record that although she was their supervisor, she had no role in their hiring decision? Well, I think the inference therefrom is if I am promoting an employee, it is my responsibility to promote an employee. And my boss tells me, no, you can't promote this person. But don't we have sworn affidavits or declarations from each of the two hiring individuals that the supervisor, in this particular case, had absolutely no role? A formal role, sure. But I think that the inference from the comment – They also said they didn't know she'd said this or thought this. That is their testimony, yes. I believe that is their testimony, yes. Can I take you back to this CFRA issue? You were saying that as you interpreted that law, it required Wells Fargo to offer Ms. Garcia replacement jobs instead of saying she could apply. Is that in your briefing? I believe it is, yes. The CFRA says that you must be offered the same or substantially similar employment at the end of your protected leave. Thank you. And I would like to reserve a couple of minutes, so if I may proceed to the McDonnell-Douglas text for purposes of retaliation. Here, there's California case law that says temporal proximity for causation. That is unspeeded. She worked there. She engaged in protected activity and was adverse action. The causal nexus here, temporal proximity. There's California case law that says that's enough if it falls hard on the heels of the protected activity. Here, she was actively engaging in protected activity by being on CFRA leave. That's the protected activity is being on CFRA leave. For purposes of CFRA retaliation, yes. Okay. So if she's engaged in protected activity by being on CFRA leave, and here we have a case where she asked for additional leave. She's on PDL leave. She has her child, and she asked for additional CFRA leave for bonding time, which is appropriate under the CFRA. And then, I believe it's two weeks later, employees from Wells Fargo come to her home under the pretext of seeing the new baby, and they confiscate all her equipment, her keys, her laptop, everything. And they also say something about a new HMC is sitting at her desk. Yes. It seems inconsistent with the fact that they don't need any new HMCs. Precisely. They don't need – according to Wells Fargo, they don't need any more HMC juniors because the mortgage market had slowed down, but that is contradicted by – An HMC junior is very different from an HMC. An HMC is sort of a principal. Yes, but the HMC does all the work that an HMC junior would do, plus they have additional responsibility. But they don't have to share – they don't have to share their – they don't have to share 25 percent of their – No, no, they don't. But if their reasoning for laying off the position is that there was this slowdown in the mortgage market, that is contradicted by the fact that they brought on a new HMC who sat at Ms. Garcia's desk. Did they know at that point that Ms. Marco was no longer going to be there as an HMC? She had already been promoted to branch manager. So they didn't have an HMC then, is that correct? I don't know how many HMCs they had at that point. But they could have been replacing Ms. Marco with the other one who decided that she didn't want an HMC junior, which would have been her prerogative. I believe there was more than one HMC at the branch. Okay, but however many there were – This is what I thought. They were claiming to need a new desk, which meant that it was an additional person. Yes. They needed her desk, in fact. They needed Ms. Garcia's desk. Right. So the implication there to me is that all the other desks were filled. Or if not, that means they went and confiscated her laptop and her keys not because they needed the desk, but because they were terminating her. Intended to terminate her because they didn't terminate her until later. Yeah, a little while later. They intended that this was the first step in ending her employment. On temporal proximity – I'm almost up with your time. Do you want to save some time? Yes, Your Honor. Thank you. Thank you. Good afternoon, Your Honors. My name is Thomas Kaufman for Wells Fargo Bank. I think I'd like to start from a very important place, which is the actual evidence. What's important about the record here to – and I think, Judge Bibby, you recognize this. The plaintiff took no depositions in this case whatsoever. She didn't depose Ms. Marco. She didn't depose Ms. Armenta or Ms. Abasta, who were involved in the decision of hiring the loan doc specialist. She didn't depose Denise LaPierre, who's the HR person who set forth information about what was going on in the region and hiring. All we have is her own declaration, which, as we pointed out at – Deposition. Well, we have her deposition, true. But she is relying entirely for her appeal on her declaration, which is excerpts – we objected to various portions of it, excerpts of the record 56 to 60, because it's full of double hearsay, statements made with no foundation whatsoever. I'll give you an example. The key – one of her key pieces of evidence, supposedly, of discriminatory intent, is she says that Deborah Marco told me that she heard from Adele Hassan. Adele Hassan didn't want to hire a pregnant person for – or didn't think a pregnant person should be hired for this position. I forget that. Let's talk about the CIFRA issue. Sure. The – this is what troubles me. My understanding is that the explanation has been that this job was being eliminated because the mortgage – the percentage of mortgage loan – the volume of mortgage loans has gone down. Okay. And that there were a total of eight eliminations region-wide, which is minuscule. Let's start at the beginning for that. There's a job called an HMC, which is a salesperson job. It's a person whose job it is to go find leads, drum up mortgage business. They're paid on commission. Just answer my question first. Was that the explanation given? The nuance to it is she was an HMC junior supporting an HMC. I understand that. That person who she was supporting, they no longer had volume to support an HMC junior. At the same time, the region was going through some of a slowdown, and she was, in fact – there were seven other people whose jobs were – Out of thousands. Is that right? Well, out of all jobs in the entire region. And they were scattered all around. I mean, it doesn't really look like this was anything systematic coming from up above. This was generated from below. We're not claiming that – we're claiming that the job she had was eliminated. That's the key question. This is not a riff. It's not a riff in the sense of we're getting rid of 40 HMC junior positions at the same time. The issue was the need for her job in the first place was supporting an HMC, and for an HMC to take on an HMC junior, the HMC has to have enough volume that it makes sense. And she has an explanation in her declaration, which is that these numbers are not what they appear to be because, I guess – by that time, was Debra now branch manager or something? Debra? Okay. Debra had been HMC. She supported Debra as an HMC. Right. Debra is promoted to branch manager. Right. And was the decline – so was Debra still also an HMC? Debra primarily was job was managing. But as a manager, you have some production. But you're not in a dedicated HMC. Your job is primarily to manage a branch. Well, then, therefore, the person who – so who was the HMC who didn't want her anymore? She was Debra's HMC. And Debra looked to see – She wasn't an HMC anymore. Debra did some production, but nobody needed an HMC junior because – Isn't the relationship between Marco and Garcia at will? It's a one-year agreement, but after that, doesn't it become at will? Well, first of all, Marco doesn't hire her. I mean, she is Marco's – Right. But there's actually an agreement. They actually have to agree between them on the 75-25 split. Correct. But basically, at the end of the year, at the end of their agreement, if Marco felt that it was no longer – she no longer had enough business to justify giving 25 percent to someone who's delegating loan processing duties to, that she would not continue the relationship. But in the whole branch – It's not up to her. It's up to her in the sense that she's not Wells Fargo. Ultimately, if their contract ends, she's still a Wells Fargo employee, and Wells Fargo would look to see if there's someplace else they could put her. So why wouldn't SIFRA then require Wells Fargo to offer Ms. Garcia a job in these circumstances as opposed to say, go ahead and apply? Okay, because Tomlinson versus – Tomlinson versus Qualcomm. The standard is under SIFRA. You don't get any more rights under SIFRA as you would as if you were working there and you had an active job. We can't punish you for having taken a leave. So, for example, if we said we're going to get rid of the least productive person here and, oh, you were gone for six months, you didn't produce anything, you're gone. That's not allowed. But did Wells Fargo ever demonstrate that there wasn't an HMC junior job available? Not that one, but one, one. Yeah, that's – back to the evidence again. We have put in evidence that at her branch, the job she had was eliminated. That's a different point. I mean, the job she had was eliminated in large – insofar as you define it as HMC junior for Deborah, whatever her name was, because Deborah, whatever her name was, is not even an HMC anymore. But the question is, is there an HMC junior job at her branch? And also, is the SIFRA obligation limited to her branch? That is – well, let me break that down. The HMC junior position at the branch has to support an HMC. So there has to be an HMC who has volume sufficient that they're willing to take a pay cut to basically give 25 percent of their business to an assistant, that it makes sense to that person that they want to have this – that it's economically in both people's interest. The evidence from Deborah Marco's declaration is she asked if there was any other HMC in the branch who wanted to have an HMC junior. None of them did. The position was eliminated. It wasn't as if another HMC junior was hired a week later and was doing the duty. The entire HMC junior position was eliminated. And that's the – What about Judge Berzin's question about going beyond the branch to all the other Wells Fargo offices? Well, you have a job at a branch, though. I mean, you have to have someone who you support. There was no – her job initially had been to support Deborah Marco. She'd been at a branch. There was no need for the job at the branch anymore. Now, is there some other job? Could you look around and find some other job somewhere in Wells Fargo? So is the way this – did they hire a new HMC at that point? No. At some point in this process, there's regularly turnover of one sort or another with the HMCs. Because, again, HMC generates their own work. You might have a slow general market, but there's somebody over at Bank of America who's got a huge line of clients who can come in and still be productive. HMC junior, there was a support position. They basically feed off of an HMC. I have a question. Did they hire a new HMC? It was in the record that at some point in this process, there was an HMC who was hired. And did anybody ask her whether she wanted to have an HMC junior? Yes. Again, the evidence, as opposed to speculation from plaintiff's own declaration. They asked a new person whether she wanted to have an HMC junior. I said she asked everybody there. If they – it's under her Marcos. The person – the new HMC is not named. Is that right? Isn't that the problem? I mean, Judge Berzon is asking you a very specific question, which you've given a very general answer to. As I understand it, the new HMC person who took the place of Deborah Marco or took her desk or whatever is not named in the declaration. Is that correct? She's not named by name in the declaration. Okay. And what Deborah Marco says, I asked around. Nobody else wanted an HMC junior. All we can do is say, well, maybe she talked to her and maybe she didn't. Well, if the plaintiff took Deborah Marco's deposition and put in evidence that there was some – Right. Well, that's a different problem. But I'm just – we're just going by what we know. What we know is we don't know whether Deborah Marco specifically spoke to – The undisputed record, in terms of getting the evidence, is that Deborah Marco, when she didn't have any need for plaintiff anymore, she asked other – everyone in the office if they – But this is the problem. This is what I don't understand. Was this new person on board at the time she was asking this question? The record doesn't say. Right. Exactly. That's the problem. So we don't know whether she asked this person. Well, we know that she asked everybody who was there. And, again – Do we know when? We don't have a specific date that's on here now. But we have – during this process, the process was she didn't need her anymore. They went through this process of looking to see if there was someone else. And then – What about this business about coming to her house and saying we're looking – we want to see the baby and then taking all her stuff? The evidence that Wells Fargo put in was that, I mean, there's going to be a dispute of fact, I suppose, about what happened at her house. I don't think it's relevant to anything. Wells Fargo said that they had to go get her computer from her. But, again, there's no – the fact is – Why did they have to go get her computer from her if they weren't planning to not have her job before they officially made the decision not to have her job? They needed her computer for reasons having to do with the computer itself. It wasn't – I think it's in the record about this. I mean, again, I think this is sort of a side issue in the sense that it doesn't go to – Why is it a side issue? It could be – it's a peculiar thing to do, at least. And you would want to know, especially if you're showing up and saying, oh, nice baby, and then you're asking for all the stuff. That's what she says. Hold on. It says in the record. My recollection from the record – I will – my recollection from the record is that they had to get her computer for some reason having to update the software or do something with the computer. Plaintiff's version of the events is that when they came to my house, they said, nice baby, and they took my computer. The reason I say it doesn't matter is – And her keys. And her keys. But, again – Does that sound like you're not coming back? Not necessarily. I mean, she could be out on leave and they need – You never took her keys when she left? And now what? Okay. It's Guzman and Villalobos or something who came to see her. Guzman asked for my laptop because I was going to be receiving a new one. I gave her my laptop. So without thinking anything, I gave her both stuff. Yes. But you don't have any declarations from Guzman or – No, because, again, the key issue here is back to the key case that's governing all this, Tomlinson v. Qualcomm, was her position eliminated? I mean, again, we're not talking about the whole failure to hire, which I – It's somewhat relevant to that question because if at some point before they supposedly made the decision to eliminate her position, they were already setting up a situation where she wasn't going to have a job because she wasn't going to have a computer and she didn't have any keys, and they're treating her as a non-employee at that point, that's somewhat relevant. She was out on leave, Your Honor. She's not using her computer or doing work with her computer. She was out on leave for a long time before they came and – At some point they went and got back her computer while she was on leave. It wasn't like she needed her computer while she was on leave or she was doing her job and they suddenly mysteriously did this. The undisputed evidence is that the job, her job, the need for her job was eliminated and that at the end of the process, through the Wells Fargo normal process she was laid off, she was offered a 90-day job search leave to look for other jobs in the company, and she didn't even try. Did they take her keys as well? According to her testimony, which is for the – which has to be deemed as an undisputed fact, they took her keys. But again – Well, why would they show up in the middle of her leave? I mean, maybe they would have a policy that at the beginning of leave she has to get her keys, but they didn't do that. In the middle of her leave they show up and they say, give me your keys. Because they needed her – they needed the keys for the branch, they needed to get her computer for some – to update the software. I don't see the line between the fact that they take her computer and her keys from – that somehow shows that the elimination of her position was protectable. But what is the time relationship between that and when they announced that there was a reduction and her job was being eliminated? Very close. They were within a few weeks of each other, I believe. But – Just that they – before they told her they were eliminating her job, they already knew they were eliminating her job. Well, we knew that her contract with Deborah Marcotte ended, and they were looking for other opportunities for her in the branch. But there were none, and that's why they ultimately eliminated the position. There's no evidence that any of that's not true, though. Is there – if there was some evidence, like I said, for example, that somebody else was hired into her role, this notion that the HMC and HMC junior position are the same thing is simply not true, not supported by any evidence in the record. But the evidence that's undisputed is she's out, the position's eliminated, and they notify her. They offer her an opportunity to look for another job. They give her a 90-day job leave, and she doesn't even do it. I don't understand why the fact that she – or got her keys back. She didn't have her keys. I don't know how that raises an inference in the absence of any evidence contradicting that the job was eliminated, that the job wasn't really eliminated, or that the reason they eliminated the job was because she was on pregnancy leave. Well, at least that it wasn't eliminated when and how they said it was eliminated. But what they've said all along – again, focus on Deborah Marcotte's declaration and Dina LaPierre. There's not one statement in either one of those declarations that has been contradicted. Plaintiff certainly hasn't contradicted them, except where she says things like, I believe Deborah Marcotte's volume was the same, but she would have no foundation whatsoever to be able to address that. At most, it would be a hearsay statement of something she learned from Marcotte, and Marcotte doesn't corroborate that, and she never took Marcotte's deposition. So the evidence that's there is the position's eliminated. The evidence that's there is that nobody is hired to fill it. The evidence is that she's offered alternative opportunities to look for other work within Wells Fargo. But she wasn't offered a job. She wasn't offered a job in the sense of – she wasn't guaranteed. When your job is eliminated, you're not guaranteed, like, for example, if you're a disabled employee who can no longer do their position, you get some kind of special rights to reinstatement. Under Tomlinson v. Qualcomm, if your job is eliminated completely, and it doesn't have to prove that it was part of a large reduction in force. The standard is if your job is eliminated and there's no evidence your job would have not been eliminated had you not taken a leave, if that's eliminated, you're not entitled to anything. But Wells Fargo, as a matter of its practice when it lays off people, it has a 90-day job search leave or it gives them assisted job search leave to look for another job in the company. And Plaintiff did not participate in that at all. She just stopped looking. So, Your Honor, if the question was – if this was some kind of mysterious grounds around why her job was eliminated, that would be one thing. But there is no – there's no evidence raised at all that her job was eliminated for some reason other than that the job – there was no longer a need for that role. And if Plaintiff doesn't produce any evidence to support her point, I don't think we can make an inference that because someone took her computer, it must be showing that they didn't really want to get rid of her position. I think what she would need instead would be some evidence that the role continued in some way. Like, if she had gone and taken discovery and found that there was – her duties had been reassigned to two other people. But the evidence is undisputed that her role was eliminated completely, which brings you into Tomlinson v. Qualcomm. Okay. Thank you very much. Thank you very much. You did a good job of sticking to your time. Briefly, if I may address the claim that if the position is eliminated completely, then they have no responsibility to the employee. There is an exception to that. If the job duties are subsumed by someone else at the branch or within the company, then that exception to that CFRA reemployment guarantee doesn't apply. So here we have a new HMC who Plaintiff alleges, I believe in her declaration, that took her desk at the branch. Moreover, the reason, I believe, that Plaintiff alleges that – What does that show? Ms. Garcia was not an HMC. But an HMC does perform the job duties of an HMC junior. Well – And then some. Yes, and then some. So it's not like the – But the HMC gets to decide whether she wants an HMC junior. Well, you just heard that Wells Fargo is actually the employer, and they decide who is actually employed at the branch. So if they're bringing in someone new to handle this loan volume, it does not – Being an HMC junior doesn't mean that you're qualified to be an HMC. No, but bringing in a new HMC indicates that there is actually work to do by HMC. But also, I suppose that if you have one HMC in branch, then she would be generating – she could generate more work and have work for the junior. But if you have two at the branch, then they're going to – then the other person may get her – may be generating some of the work, and therefore there won't be need for a junior. So how many HMCs there are may have to do with whether there's a need for a junior or not, or whether the person would be willing – in other words, whether the – if there's only one HMC there, she may get the bulk – she may get the loan business and therefore be willing to share the money. Is that – I don't know if that's right or not. Yes, I think so. But I think that there is – a reasonable jury could conclude, could infer by the fact that they brought in this HMC, is that this HMC subsumed the work of the HMC junior, who was Ms. Garcia, when they brought her on. There's another way of sort of saying what I said, which – and therefore they didn't – the person who would have had the junior didn't need the junior anymore or wouldn't want the junior anymore because she was generating less work because somebody else was competing with her. Yes. But that HMC was no longer an HMC. She was a branch manager. And the record is unclear whether or not she was replaced and an additional HMC was brought on or the new person brought on was to replace Ms. – I believe her name is Marco. Also, on the point of taking the keys away and laptop, it does lead to an inference of retaliatory animus because it falls close on the heels of her requesting more leave. When did she request the leave? I believe it was two weeks before they – it was right after her child was born. I believe it was two weeks before they came and took her keys and laptop. And how long was she going to be out? I believe the balance of the C for time, which would be 12 weeks. Okay. So they came sort of at the beginning of that – of this three-month period. Yeah. So you're going to be getting a new laptop anyway. Yes, that is my understanding. And following close on the heels – and so she was on this PDL leave and she requests additional leave. And after she requests that additional leave, then they come and take her laptop and her keys and tell her that, oh, you're going to get a new one, don't worry about it. Well, they take the keys later than they take the laptop. They took a key – they took a FOB, and the FOB with the laptop was something that she needed in order to be able to access the keys they came and got later in September. Yes. Yes, they came and they grabbed the FOB, which I believe she needs to access the network and maybe her office. I wasn't ever quite clear about what the FOB did, but it was something important to exercise – it was something important for her to do her job. With that, I believe I'm well over time. Thank you very much. Thank you. Thank both of you for a helpful argument. Garcia v. Wells Fargo Bank, and we are adjourned.
judges: Berzon, Bybee, Gleason